SIDNEY L. BOORSTEIN & another,[1] trustees, *vs.* CITY OF BOSTON.

No. 88-P-784.

Suffolk. September 18, 1989. - March 6, 1990.

Present: DREBEN, CUTTER, & SMITH, JJ.

*Massachusetts Tort Claims Act. Practice, Civil*, Requests for instructions, Special questions to jury, Amendment, Complaint, Failure to make objection. *Negligence*, Comparative, Demolition of building.

In an action for damages against a city for the alleged unlawful demolition of the plaintiffs' building, the judge did not err in denying the plaintiffs' request for a special question and instructions to the jury on the issue of the city's liability under the "wrongful act" wording in G. L. c. 258, § 2, where the case had proceeded on the theory of negligence and the plaintiffs' "wrongful act" theory had not been an issue at trial. [317-318]

At the trial of a negligence claim in which the defendant city did not affirmatively plead comparative negligence, the judge did not err in allowing the city's motion, filed after the jury found that the plaintiffs' negligence was greater than that of the city, to amend its pleadings to include the defense of comparative negligence, where the record demonstrated that the issue of comparative negligence had been tried with at least the implied consent of the parties and that there was no prejudicial surprise to the plaintiffs. [318-320]

CIVIL ACTION commenced in the Superior Court Department on August 14, 1981.

The case was tried before *John C. Cratsley*, J.

*Joseph F. Dalton* (*Karen Dean-Smith* with him) for the plaintiffs.

*Peter Antell*, Assistant Corporation Counsel (*David P. Ryan*, Assistant Corporation Counsel, with him) for the city of Boston.

---

[1]Vincent A. LoPresti.

SMITH, J. The plaintiffs, as trustees of the York Realty Trust, brought an action against the city of Boston (city), its building commissioner and Mystic Building Wrecking Company, Inc. (Mystic Wrecking), claiming damages from the alleged unlawful demolition of their building. The plaintiffs amended their complaint several times. The final version of the complaint included counts under G. L. c. 258 (the Massachusetts Tort Claims Act) that alleged negligence by the city and its building inspector. Other counts alleged constitutional, and civil rights violations and trespass by the same defendants. In addition, the complaint requested judgment against Mystic Wrecking for damages incurred as a result of its alleged "negligence and breaches." Mystic Wrecking included a comparative negligence defense (G. L. c. 231, § 85) in its answer claiming that the plaintiffs' negligence was greater than its possible negligence.

The city filed a motion to dismiss the plaintiffs' revised complaint. In a memorandum accompanying his decision, the motion judge ruled, among other things, that "the plaintiffs' complaint states a cause of action in negligence and so is governed by the Massachusetts Tort Claims Act. G. L. c. 258." He also ruled "as matter of law that the events which led to the destruction of the plaintiffs' building could be found to have been caused by the alleged negligence of the [city] and its employees in failing to give proper notice to the plaintiffs." The judge denied the city's motion with respect to the plaintiffs' negligence claim against the city under G. L. c. 258. He dismissed all of the plaintiffs' claims against the building inspector. For reasons not relevant to this appeal, the judge dismissed the plaintiffs' trespass, constitutional, and civil rights claims. The plaintiffs and the city have not appealed the motion judge's decision.

The plaintiffs' negligence claims against the city and Mystic Wrecking were tried before a jury. At the conclusion of all the evidence, the judge held a conference with counsel to discuss the wording of the special questions that he planned to submit to the jury under Mass.R.Civ.P. 49(a), 365 Mass. 812 (1974). He denied the plaintiffs' request for a separate

question and instructions on the issue of the city's liability under the "wrongful act" wording in G. L. c. 258, § 2, as appearing in St. 1978, c. 512, § 15. The judge allowed the city's request for a special question and instructions on the issue of the plaintiffs' comparative negligence.

By their answers to the special questions, the jury found that the city was negligent and that its negligence was a proximate cause of the plaintiffs' damages which the jury assessed at $40,000. The jury also found the plaintiffs negligent, apportioned their negligence at 67% and apportioned the city's negligence at 33%. The jury decided that Mystic Wrecking was not negligent. On July 7, 1987, judgment entered for the city and Mystic Wrecking. On July 16, the city filed a motion to amend the pleadings to add the affirmative defense of comparative negligence pursuant to Mass.R.Civ.P. 15(b), 365 Mass. 761 (1974). The motion was allowed by the judge.

The plaintiffs claim that the judge committed error when he denied their request for a separate question concerning liability for a "wrongful act," and allowed the city's request for a special question on comparative negligence. They also contend that the judge erred by allowing the city to amend its pleadings to add the defense of comparative negligence. The plaintiffs make no claim of error concerning the conduct of the trial as to Mystic Wrecking.

We summarize the evidence presented at trial. The plaintiffs, as trustees, owned a multi-unit commercial building at 5-5A Breed Street, East Boston. On December 9, 1977, the building was damaged by fire. The plaintiffs cleaned, secured and boarded the building. On December 23, 1977, the city's building department received a request for inspection of the building. On February 3, 1978, an inspector examined the building and made a report noting an "unsafe and dangerous [condition], windows broken and missing open to the elements and trespass," in violation of the State building code.

About February 7, 1978, the city sent notice to the plaintiffs apprising them of the violation and directing them to apply for a permit to repair or raze the building. G. L.

c. 143, § 6. The notices were sent by certified mail, return receipt requested, to Boorstein at 213 Waltham Street, West Newton, and to LoPresti at 32 Central Road, Somerville. Neither address was current and both notices were subsequently returned to the city, with post office notation of "return to sender" and "addressee unknown." Both plaintiffs had moved in 1976, Boorstein to 41 Exeter Street, West Newton, and LoPresti to 6 Laurel Street, Medford. LoPresti subsequently moved to Stoneham. Neither plaintiff had informed the city of a change of address.

On February 23, 1978, the city hired a contractor to board the building. A claim for the boarding expenses was subsequently forwarded to the city collector. On March 1, 1978, the city deemed the building safe and a sign was posted on the building declaring it to be "secured by the taxpayers of the [city]."

A survey of the building by the city, conducted on June 19, 1978, in response to a new complaint, revealed that it had again become "unsafe" and was in a "dangerous condition." The city, through its building department, sent a notice to the plaintiffs, as revised June 29, 1978, c/o "Vincent LoPresti, 119 Highland Street, Chelsea . . . ," by certified mail return receipt requested. The notice stated, in substance, that the building at 5-5A Breed Street had been determined to be unsafe and dangerous; that the plaintiffs should apply for a permit to repair or raze the building; that if they failed to do so "forthwith" the department "may enter" and make the building safe or remove it; that the cost of such work would be billed to them; and that their right of appeal from the order "expires . . . forthwith." An identical notice was posted on the building. The impending demolition was not otherwise published.

Neither plaintiff had ever lived or owned property in Chelsea. The letter was returned "addressee unknown." In early July, the building department sought and received the mayor's approval for a demolition order, and the project was put out to bid. The city contracted with Mystic Wrecking to

demolish the building. By September 15, 1978, the building was razed.

1. *The "wrongful act" issue.* General Laws c. 258, § 2, states, in part, that "[p]ublic employers shall be liable for injury or loss of property . . . caused by the negligent *or wrongful act* or omission of any public employee while acting within the scope of his office or employment . . . ." (emphasis added). According to the plaintiffs, a "negligent" act and a "wrongful" act provide two distinct grounds of liability under the statute. They claim that at trial they produced evidence as to both grounds and that the judge committed error in refusing their request for a special question and instructions premised on the city's liability for a "wrongful act" as well as a "negligent" act. The city contends that the plaintiffs' "wrongful act" theory did not appear in the case at all and was raised only when the parties were reviewing the special questions and requests for jury instructions. Therefore, according to the city the judge was not required to submit a special question on the "wrongful act" issue.

Assuming, without implying in any way, that the plaintiffs' interpretation of the statute is correct, we, nevertheless, agree with the city's position. The plaintiffs did not plead a "wrongful act" theory in their complaints — not in the original complaint or in their amended complaints.[2] It was not raised as an issue in any pretrial motion.[3] Indeed, the plaintiffs, during the trial, never directed the judge's attention to

---

[2]In Massachusetts, "there is no requirement that a complaint state the correct substantive theory of the case." *Gallant* v. *Worcester*, 383 Mass. 707, 709 (1981). Therefore, the fact that the plaintiffs' various complaints did not set out their "wrongful act" theory does not, by itself, warrant a conclusion that the theory was never raised. Its omission in the complaints, however, may be considered as a factor in deciding whether the theory was an issue at the trial.

[3]The motion judge never mentioned the "wrongful act" theory in his lengthy memorandum that accompanied his decision on the city's motion to dismiss.

their "wrongful act" theory even when the situation called for them to do so.[4]

In the circumstances, we conclude that the "wrongful act" theory of liability, now advanced by the plaintiffs, was not an issue at trial. "A judge is required to submit to a jury only the issues which the parties have seen fit to try." *Dalton* v. *Post Publishing Co.*, 328 Mass. 595, 598-599 (1952). See *Smith* v. *Eagle Cornice & Skylight Works*, 341 Mass. 139, 143 (1960). See also Nolan, Civil Practice § 706 (1975)("a party is not entitled to an instruction upon a legal theory . . . [not] made an issue in the case . . . "). Therefore, on the basis of this record, the judge did not err in refusing the plaintiffs' proposed special question and instructions on their "wrongful act" theory.[5]

2. *The instructions on comparative negligence.* The city did not affirmatively plead the defense of comparative negligence. The judge, however, submitted that issue to the jury by way of a special question and instructions. After the jury found that the plaintiffs' negligence was greater than the city's negligence, the city filed a motion to amend its pleadings to include the defense of comparative negligence. Mass.R.Civ.P. 15(b). The trial judge heard and allowed the motion, ruling that "these issues were tried by the express or implied consent of the parties and that these amendments are necessary to conform the pleadings to the evidence."

---

[4]The plaintiffs argued at the charge conference and again on appeal that comparative negligence cannot be asserted as a defense when liability is predicated on a "wrongful act."

Yet, when evidence of the plaintiffs' own negligence was introduced at trial by both the city and Mystic Wrecking, the plaintiffs did not request that the judge forthwith instruct the jury that such evidence could be considered only on the negligence ground. The absence of such a request further demonstrates that the plaintiffs' "wrongful act" theory was injected into the case after the close of the evidence.

[5]The judge denied the plaintiffs' request for a special question on the ground that the meaning of the words "wrongful act" in G. L. c. 258, § 2, was synonymous with "negligent" act found in that statute. Therefore, he ruled that the words "wrongful act" did not set out a separate basis of liability.

We do not rely on the ground that was the basis of the trial judge's decision. See *Beeler* v. *Downey*, 387 Mass. 609, 613 n.4 (1982).

The plaintiffs argue that because the city did not affirmatively plead the comparative negligence defense, they had no notice of such defense and therefore were unfairly prejudiced by its submission to the jury and by the allowance of the amendment to the pleadings. The argument is without merit.

Rule 15(b) provides, among other things, that a judge may allow pleadings to be amended to conform to the evidence when an issue, not raised by the pleadings, is tried with the express or implied consent of the parties and there is no prejudicial surprise. See *National Medical Care, Inc.* v. *Zigelbaum*, 18 Mass. App. Ct. 570, 578-579 (1984).

In this case, the record amply demonstrates that the issue of comparative negligence was tried with at least the implied consent of the parties and that the plaintiffs were not prejudicially surprised. Mystic Wrecking affirmatively pleaded comparative negligence as a defense. Therefore, the plaintiffs were alerted, prior to trial, that evidence pertaining to the defense would be forthcoming. Such evidence was introduced not only by Mystic Wrecking but also by the city. It included testimony by the plaintiffs that they were aware of the condition of their burnt out building and that they did not communicate with the building department during the ten-month interval between the fire and the razing of their building. One of the plaintiffs (LoPresti) admitted that he not only failed to advise the building department of his change of address but also instructed his tenants not to sign for certified mail. There was no objection by the plaintiffs, based on lack of relevancy, to the city's line of inquiry. That omission is of significance. See *Hall* v. *Horizon House Microwave, Inc.*, 24 Mass. App. Ct. 84, 87 (1987)("consent [to an issue being tried] may be implied from acquiescence, i.e. the absence of objection"). The plaintiffs, however, argue that their consent cannot be implied by their failure to object because such evidence was also relevant on a different issue (i.e. lack of notice to the plaintiffs of the pending demolition of their building) and there was no indication that the city was raising the issue of comparative negligence. We disagree.

As noted by the motion judge, the plaintiffs' revised complaint alleged negligence by the city in failing to give proper notice to the plaintiffs of the proposed demolition of their building. In line with their complaint, the plaintiffs testified on direct examination that they had not received proper notice from the city. On cross-examination by the city, the plaintiffs admitted they had been aware of the condition of their building after the fire, yet failed to notify the building department of their change of addresses. That evidence was obviously elicited by the city for one purpose — to counteract the plaintiffs' claim that the city was negligent by showing that the plaintiffs were negligent. The plaintiffs' failure to object to such evidence is a clear signal that they were well aware that comparative negligence was an issue at trial.

The plaintiffs also argue that the defense of comparative negligence was not available because, in any event, their claims against the city were based on constitutional and civil rights violations. That argument is without merit. The motion judge, prior to the trial, dismissed the plaintiffs' claims of trespass and constitutional and civil rights violations and reduced their action to a negligence claim. The plaintiffs did not object to the motion judge's ruling. Therefore, the defense of comparative negligence was available, both procedurally and substantively, to the city.

Finally, we have examined the other issues raised by the plaintiffs and find that they do not have merit.

*Judgment affirmed.*