JOAN SQUERI & another[1] *vs.* PAUL B. MCCARRICK &
another.[2]

No. 90-P-167.

Suffolk. September 23, 1991. - March 9, 1992.

Present: WARNER, C.J., SMITH, & IRELAND, JJ.

*Practice, Civil*, New trial, Instructions to jury. *Landlord and Tenant*, Ter-
mination of tenancy, Notice. *Notice. Consumer Protection Act*, Availa-
bility of remedy, Unfair act or practice, Trade or commerce, Damages.
*Damages*, Consumer protection case, Tort, Future earning capacity.

In an action between tenants and their landlord, a new trial was required
on certain claims where the judge's instructions were erroneous and
confusing to the jurors. [204-206, 206-208]
In an action between tenants and their landlord, the landlord was entitled
to a directed verdict on the tenants' claim for conversion. [206]

CIVIL ACTION commenced in the City of Boston Division
of the Housing Court Department on April 3, 1987.

The case was tried before *Patrick J. King*, J., sitting under
statutory authority.

*Alexander A. Padis, Jr.*, for the defendants.
*James E. Sandler* for the plaintiffs.

WARNER, C.J. In this landlord-tenant dispute in the Hous-
ing Court, the plaintiffs filed a complaint alleging, among
other things, wrongful eviction from their apartment in viola-
tion of G. L. c. 186, § 14, conversion, and negligence. Their
complaint was amended to add a count under G. L. c. 93A.
All counts were tried to a jury on special questions. The jury
found for the plaintiffs on each claim, awarding them
$38,800 in damages under the conversion theory, $122,000

---

[1] James Anthony Pritchett. Richard Dery was also a plaintiff, but his
action was dismissed, and he has not appealed. The defendants filed a
counterclaim against Dery.
[2] Denise M. Fields-McCarrick.

Squeri *v.* McCarrick.

under the negligence theory, thereafter reduced by thirty-five percent for the plaintiffs' negligence, $122,000 under each of the wrongful eviction and the c. 93A claims, and double damages under c. 93A. The judge entered final judgment for the plaintiffs under their c. 93A claim for $244,000, and awarded costs and attorney's fees of $38,294. He dismissed the plaintiffs' remaining claims. He later allowed the plaintiffs' motion to amend the final judgment to include judgments on the claims that had been dismissed. He awarded costs for each of those judgments and attorney's fees for the G. L. c. 186, § 14, claim. Recovery was limited to the c. 93A count. The defendants' motions for a directed verdict, for judgment notwithstanding the verdict and for a new trial were denied.

After painstaking review of the entire record of the trial in this case, which the judge correctly described as "a very close case," we conclude that the trial was so laden with error, misinstruction, and probable juror confusion that substantial justice requires there be a new trial, even though the defendants did not properly preserve for appeal some of what we consider wrong. See *Pilos* v. *First Natl. Stores, Inc.*, 319 Mass. 475, 479 (1946); *Tuttle* v. *McGeeney*, 344 Mass. 200, 208 (1962); *Melrose Appliance Center, Inc.* v. *Eastern Erection Co.*, 354 Mass. 771, 772 (1968).

Our reasons briefly are as follows.

1. *Illegal eviction claim.* The case in this respect had been tried on the theory that the defendants had failed to give proper notice of termination of the plaintiffs' tenancy in violation of G. L. c. 186, § 12,[3] and, therefore, their eviction was illegal under G. L. c. 186, § 14.[4] In his main charge, the

---

[3] General Laws c. 186, § 12 (1986 ed.), provides in pertinent part: "Estates at will may be determined by either party by three months' notice in writing for that purpose given to the other party; and, if the rent reserved is payable at periods of less than three months, the time of such notice shall be sufficient if it is equal to the interval between the days of payment or thirty days, whichever is longer."

[4] General Laws c. 186, § 14 (1986 ed.), states in pertinent part: "Any lessor or landlord of any building . . . occupied for dwelling purposes . . . who attempts to regain possession of such premises by force without benefit of judicial process, shall be punished by a fine of not less than twenty-

judge told the jury about rent control regulations in the city of Boston and left it to them to determine whether the apartment in question was subject to rent control. Later, in answer to questions by the jury, he instructed them that the property *was* subject to rent control and, therefore, the defendants could not evict the plaintiffs without permission, which they did not have, from the rent control board. He then said, as to the notice to quit, "the issue of the notice to quit . . . has no relevance to the case . . . . Moreover, there is no evidence from which the jury could find that any notice to quit was served on the plaintiffs in this case or their agents." The case had not been tried on a theory of violation of the rent control ordinance.[5] See *Anthony's Pier Four, Inc.* v. *HBC Assocs.*, 411 Mass. 451, 471 n.25 (1992). Cf. *National Med. Care, Inc.* v. *Zigelbaum*, 18 Mass. App. Ct. 570, 578-579 (1984). The jury had to have been thoroughly confused.[6] The jury should have been instructed on the proper standards to apply in determining the validity of delivery of notice under G. L. c. 186, § 12. See *Ryan* v. *Sylvester*, 358 Mass. 18, 19-21 (1970).

2. *Negligence claim.* Without proper instructions on the G. L. c. 186, § 12, question, the jury were not correctly guided on the issue of the status of the plaintiffs as tenants at

---

five dollars nor more than three hundred dollars, or by imprisonment for not more than six months. Any person who commits any act in violation of this section shall also be liable for actual and consequential damages or three month's rent, whichever is greater, and the costs of the action, including a reasonable attorney's fee . . . ."

[5]Before testimony was offered, a copy of the Boston rent control ordinance was introduced in evidence. It was not shown to the jury and its applicability was not otherwise raised at trial.

[6]Indeed, the jury's questions indicated that they were focusing on the efficacy of the delivery of notice under G. L. c. 186, § 12, without regard to whether the property was subject to rent control. The jury had to be further confounded by the judge's gratuitous instructions in the main charge (following those on rent control) on what he described as a "condominium eviction package" to which he said tenants are entitled on conversion to condominiums.

the time of the alleged wrongs and, hence, could not determine the duty owed to the plaintiffs by the defendants.[7]

3. *Conversion claim.* It was error to deny the defendants' motion for a directed verdict on this claim. There was no evidence from which the jury could conclude that the defendants or their agents had more likely than not taken the plaintiffs' property. See *Abington Natl. Bank* v. *Ashwood Homes, Inc.*, 19 Mass. App. Ct. 503, 507 (1985); Nolan & Sartorio, Tort Law § 55 (2d ed. 1989); Restatement (Second) of Torts § 222A(1) (1965). Such evidence as there was permitted only speculation.[8],[9]

4. *General Laws c. 93A instructions.* (a) The judge instructed the jury that if they found for the plaintiffs on the negligence or conversion[10] claims,[11] they were required to find that the defendants had violated c. 93A. This was error.

---

[7]There was no error in the refusal to instruct the jury on the question (apparently raised in the defendants' counterclaim, which is not reproduced in the record) of the subtenant Dery's negligence as a contributing factor in the plaintiffs' loss. That issue was not tried. See *Boorstein* v. *Boston*, 28 Mass. App. Ct. 313, 318 (1990).

[8]There was no error in the refusal to give the defendants' request for instruction on the appearance of abandonment in the context of instructions on the tort of conversion. See *Row* v. *Home Sav. Bank*, 306 Mass. 522, 525-526 (1940). Such an instruction might be apt, however, with respect to a negligence claim. *Id.* at 526-527.

[9]Because we have concluded that it was error to deny the defendants' motion for a directed verdict on the conversion claim, it is unnecessary to consider the defendants' further argument that the verdicts on the negligence and conversion claims were fatally inconsistent. We note, however, that, as there was no objection raised when the verdicts were returned, the issue was waived. See *Stone* v. *W.E. Aubuchon Co.*, 29 Mass. App. Ct. 523, 529 (1990).

[10]In view of our conclusion that there was insufficient evidence to support the conversion claim, we need not consider this aspect of the instruction, although the principles we discuss with respect to negligence are the same.

[11]He also instructed that a similar result would follow from a finding of a violation of G. L. c. 186, § 14 (eviction by force without benefit of judicial process). That was a correct statement of the law as far as it went. A regulation of the Attorney General (see G. L. c. 93A, § 2[c]) declared such action to be an unfair or deceptive practice. See 940 Code Mass. Regs. § 3.17(5)(a) (1991). The application of G. L. c. 93A in this case depends on whether the defendants were engaged in trade or commerce, see c. 93A, § 2(a), a point which we later discuss. As we have said, how-

A negligent act standing by itself does not give rise to a claim under c. 93A. There must in addition be evidence that the negligence was or resulted in an unfair or deceptive act or practice. See and compare *Swanson* v. *Bankers Life Co.*, 389 Mass. 345, 348-349 (1983); *Maillet* v. *ATF-Davidson Co.*, 407 Mass. 185, 193-194 (1990); *MacGillivary* v. *W. Dana Bartlett Ins. Agency, Inc.*, 14 Mass. App. Ct. 52, 59 (1982); *Glickman* v. *Brown*, 21 Mass. App. Ct. 229, 234-235 (1985); *Construction Planners, Inc.* v. *Dobax Ins. Agency, Inc.*, 31 Mass. App. Ct. 672, 677 (1992). The question whether the defendants' conduct was negligent and whether it involved an unfair or deceptive act or practice should have been left to the jury on proper instructions as to applicable standards. *Mechanics Natl. Bank* v. *Killeen*, 377 Mass. 100, 109 (1979). *Swanson* v. *Bankers Life Co.*, *supra* at 349.

(b) The jury were instructed that if they found that the defendants intended at relevant times to convert the units in the building to condominiums, "even if they planned to live in one of the units themselves," they must find that the defendants were engaged in trade or commerce for purposes of c. 93A.[12] Unless the defendants were so occupied, c. 93A would have no application. There was error in removing from the jury the question whether the defendants, in all of the circumstances, were engaged in trade or commerce with respect to the conduct of which the plaintiffs complained. That question in this case was one of fact. See *Brown* v. *Gerstein*, 17 Mass. App. Ct. 558, 571 (1984), and cases cited. The judge should have instructed the jury on the standards to be applied by them in determining whether the defendants were motivated by business or personal reasons. See *Lantner* v.

---

ever, the instructions to the jury on the notice to quit were confused and erroneous.

[12]General Laws c. 93A, § 2(*a*)(1988 ed.), provides: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

Section 1 (*b*) (1988 ed.) provides, in pertinent part: " 'Trade' and 'commerce' shall include . . . the offering for sale, rent or lease, the sale, rent, lease or distribution of any services and any property, tangible or intangible, real, personal or mixed . . . ."

*Carson*, 374 Mass. 606 (1978); *Begelfer* v. *Najarian*, 381 Mass. 177, 190-191 (1980); *Nei* v. *Burley*, 388 Mass. 307, 317 (1983); *Billings* v. *Wilson*, 397 Mass. 614 (1986).

(c) The judge instructed the jury that, if they found the defendants liable under c. 93A, they were required to assess at least double damages because the defendants had failed to respond to the plaintiffs' demand letter with a reasonable offer. (The defendants' counsel had sent a response detailing reasons for the denial of liability and declining to offer settlement.) This was error. General Laws c. 93A, § 9(3) (1988 ed.), provides for double or treble damages if there is a finding that "the refusal to grant relief upon demand *was made in bad faith with knowledge or reason to know* that the act or practice complained of violated . . . section two" (emphasis supplied). Those determinations involved questions of fact which should have been left in this case to the jury. See *Heller* v. *Silverbranch Constr. Corp.*, 376 Mass. 621, 627-628 (1978); *Wolfberg* v. *Hunter*, 385 Mass. 390, 399 (1982).

Moreover, the judge's confused instructions on the elements for recovery under c. 93A could well have led the jury erroneously to believe that they could also assess multiple damages on a finding of negligence alone without a finding that the defendants' conduct constituted a wilful or knowing violation of § 2. Even assuming an unfair or deceptive act or practice, "[a] negligent unfair act or practice does not qualify for multiple damages." *Wang Labs., Inc.* v. *Business Incentives, Inc.*, 398 Mass. 854, 858 (1986).

5. *Damages.* The plaintiffs testified to values of personal property lost because of the defendants' alleged wrongs totalling $37,760.90. There was no other evidence of specific value.[13] The plaintiff Pritchett further testified that he had

---

[13]On the conversion claim, as to which the judge gave confusing instructions on damages in his main charge, but on which, in his instructions on the special questions, he seemed to limit the jury's award to the fair market value of the property at the time of conversion (see *Manhattan Clothing Co.* v. *Goldberg*, 322 Mass. 472, 475 [1948]), the jury returned a verdict of $38,800. On clear and proper instructions, the jury could have awarded consequential damages. *Id.* at 476. Restatement (Second) of Torts § 927(2)(b) (1979).

lost $20,000 of what he could have earned as a university professor in each of two years (the only period for which he claimed such damages) because the research materials which he lost delayed his receipt of his degree of doctor of philosophy. The losses on which the plaintiffs placed a certain value thus totalled $77,760.90. Pritchett further testified that if he had received his degree he could also have earned money (in an unspecified amount generally or specifically) from publishing, consulting, photography, and lecturing. The jury's award of damages of $122,000 on each of the illegal eviction, negligence, and c. 93A claims exceeded by $44,239.10 the value of the property and lost earnings as to which there was some evidence.

"The assessment of damages for impairment of earning capacity rests largely within the common knowledge of the jury, sometimes with little aid from evidence." *Griffin* v. *General Motors Corp.*, 380 Mass. 362, 366 (1980). *Doherty* v. *Ruiz*, 302 Mass. 145, 147 (1939). While proof of damages does not require mathematical precision, it must be based on more than mere speculation. See *Bond Pharmacy, Inc.* v. *Cambridge*, 338 Mass. 488, 493 (1959); *Rombola* v. *Cosindas*, 351 Mass. 382, 385-386 (1966); *Ricky Smith Pontiac, Inc.* v. *Subaru, Inc.*, 14 Mass. App. Ct. 396, 426-427 (1982). Here, the jury had no evidence whatever to guide them in placing a value on the extracurricular pursuits of one holding a doctorate in anthropology.[14] The common knowledge of the jury surely could not fill the gap.

Moreover, what we have said as to the amount of speculative damages assumes that the jury accepted the plaintiffs' testimony as to lost earnings as a university professor. They were not, of course, required to do so. Indeed, Pritchett gave deposition testimony which could have led the jury to arrive at a smaller amount. There is, therefore, no basis in the record to arrive confidently at the figure which the jury assigned to the elements of claimed damages for lost income.

---

[14]The judge did not give, nor could he have given, any guidance on this aspect of the claimed damages.

*Conclusion.* It is unnecessary to reach other claims of error by the defendants.[15] The amended judgment dismissing the defendants' counterclaim against Richard Dery is affirmed. That part of the judgment awarding the plaintiffs damages and costs on the conversion claim is reversed, and judgment is to enter for the defendants. The remaining portions of the judgment are also reversed so that there may be a new trial on the claims of illegal eviction, negligence, and violations of G. L. c. 93A, consistent with this opinion, but only on the theories on which they were tried to the jury in the first trial. See *Parrish* v. *Parrish*, 30 Mass. App. Ct. 78, 88 (1991).

*So ordered.*

---

[15]We note, however, that there was no error in the allowance of the plaintiffs' motion to amend the complaint to add a claim under G. L. c. 93A. See *York* v. *Sullivan*, 369 Mass. 157, 164-165 (1975).