ALBERT P. DiVENUTI, JR. *vs.* ELLEN M. REARDON &
others.[1]

No. 92-P-1040.

Middlesex. December 16, 1993. - July 26, 1994.

Present: KASS, KAPLAN, & GREENBERG, JJ.

*Practice, Civil*, Amendment, Judicial discretion. *Insurance*, Fire. *Negli-
gence*, Comparative. *Consumer Protection Act*, Businessman's claim,
Insurance.

In a civil action, the judge properly denied a defendant's motion, filed on
the first day of trial, to amend her answer to add five affirmative de-
fenses, where there was no justification for the lateness of the motion,
where the other parties did not consent, and where a continuance of the
trial would have been necessary had the motion been allowed. [77-78]
The record of a negligence trial did not support the contention of a defend-
ant that the question of comparative negligence of another party should
have been submitted to the jury for their consideration [78], and the
judge correctly denied that defendant's motions to alter or amend the
judgment and for new trial based on that contention [78].
The court declined to rule on an issue raised neither before the judge nor
on appeal where no injustice appeared. [79-80]

CIVIL ACTION commenced in the Superior Court Depart-
ment on June 18, 1986.

The case was tried before *James F. McHugh*, J.

*Richard F. Wholley* for Ellen M. Reardon.

*William H. Clancy* for Utica Mutual Insurance Company.

*Alice Olsen Mann* for Manufacturers and Merchants Mu-
tual Insurance Company.

*Norman Jackman* for the plaintiff.

KASS, J. Here litigation arose and muddled on by reason of
a combination of recalcitrance and mutual finger pointing by
insurance carriers in the face of certain liability and obdu-

---

[1] Utica Mutual Insurance Company and Manufacturers and Merchants
Mutual Insurance Company.

rate refusal by the plaintiff to accept settlement in full when, albeit belatedly, settlement making full compensation was offered. As the Superior Court judge, who patiently and ably worked through the morass, observed, chapter 93A of the General Laws "is not designed or intended to throw out all concepts of reasonableness and mitigation or to allow injured parties to turn their backs on reasonable, probable, and practical dispute resolution so they can conduct a prolonged quest for the mother lode." We affirm the judgment, whose particulars are best described after a summary of facts, taken from findings made by the trial judge on c. 93A components of the case. Certain issues were tried to a jury.

Albert P. DiVenuti, Jr., the plaintiff, inquired of Ellen M. Reardon, a defendant, in early November, 1985, if she, a licensed insurance broker, could obtain fire and other casualty insurance for nine residential properties which DiVenuti owned. Among those properties was a building at 135 Williams Avenue in Lynn (the locus). Reardon was an agent of the defendant Manufacturers and Merchants Mutual Insurance Company (Manufacturers), from which she obtained a quotation of premiums for the requested coverage. On December 23, 1985, Reardon notifed DiVenuti that she had bound coverage, effective December 14, of his properties. The amount of insurance asked for and bound on the locus was $60,000. Five of DiVenuti's properties, including the locus, did not, when Manufacturers checked them out, meet its underwriting standards. Manufacturers, through a telephone call on January 9, 1986 (a call which Manufacturers confirmed by contemporaneous letter), informed Reardon that it did not wish to insure those five properties and that Reardon was to place coverage with other insurers. Neither Manufacturers nor Reardon communicated this information to DiVenuti.

Reardon acknowledges she was duty bound to find replacement insurance, but collateral business and personal circumstances bedevilled expeditious accomplishment of that task. Her office moved; a new computer system was being installed; she was off on a trip abroad. When fire broke out at

the locus on March 9, 1986, Reardon had not placed substitute insurance. DiVenuti promptly reported the loss to Reardon who, in turn, notified Manufacturers, which denied coverage. That stance, as Manufacturers acknowledged later, was mistaken because the coverage had been lawfully bound by its authorized agent (Reardon); the agent had not cancelled the binder and, above all, had given no notice of cancellation to the customer. Nor had Manufacturers notifed the customer that it desired to be rid of the coverage. Cf. G. L. c. 175, § 187C.

Conscious of her agency's exposure because she had not seen to replacement coverage, Reardon immediately notified her errors and omissions carrier, the defendant Utica Mutual Insurance Company (Utica), of potential liability to DiVenuti and to Manufacturers. Neither insurer recognized liability to DiVenuti. Utica took the position that Reardon, its insured, was blameless because Reardon had placed the wanted coverage with Manufacturers and the latter had never progressed beyond notifying her of its intent to cancel coverage on the locus. On May 7, 1986, DiVenuti wrote a demand letter, impliedly for $118,421, much in excess of the $60,000 of insurance coverage, to Manufacturers, Reardon, and Utica. The letter included c. 93A claims, hence a demand for counsel fees, and added a claim for lost rental income at the rate of $800 per month. In response, Manufacturers continued to deny liability and declined payment. Utica responded with an offer to pay DiVenuti $30,000 in exchange for a release that would leave DiVenuti free to chase Manufacturers. DiVenuti declined that ungiving proposal to pay fifty cents on the dollar and, on June 18, 1986, some three months after the fire loss, brought an action in Superior Court.

Within a month after Reardon's deposition had been taken in August, 1986, Manufacturers offered to pay the amount of the $60,000 policy, less the $1,000 deductible, but plus the reasonable legal fees incurred by DiVenuti in chasing Manufacturers for the insurance proceeds. DiVenuti's lawyer coun-

tered with an inflated demand for $83,200.[2] Manufacturers asked DiVenuti's lawyer for an analysis of the approximately $11,000 in attorney's fees that he claimed, a request he ignored. In April, 1987, Manufacturers reiterated its settlement offer and request for documentation of the claimed legal fees. To that, DiVenuti's lawyer (who was not the same as appellate counsel) responded by upping the legal fees demanded to $21,500 and restating the demand for $118,421 in damages.[3]

Ultimately, DiVenuti's claim against Manufacturers and Manufacturers's cross claim against Reardon for negligent failure to get it off the risk were tried to a jury which returned a verdict for DiVenuti of $60,000 (the face value of the coverage on the locus) and a verdict in the same amount for Manufacturers against Reardon. On the c. 93A questions, which the trial judge decided, Manufacturers had the benefit of an earlier partial summary judgment, allowed by another judge, which the trial judge decided not to revisit, not least because Manufacturers had made the most conspicuous effort to settle the case fairly. The trial judge found that Maunfacturers had not acted unfairly in refusing to accede to DiVenuti's inflated demands. Reardon, the judge found, had violated c. 93A by her negligent disregard of her duty to place substitute insurance, but, the judge determined, that failure was not knowing and wilful. The c. 93A damages to which DiVenuti was entitled came to $2,950 for the loss of use of funds between May 1, 1986, when DiVenuti's claim

---

[2]This was based on a claim for $7,080, representing six months interest plus loss of rent in that period of $5,600. Prescinding from the question of the propriety of that demand in the face of a not ungenerous offer to pay the policy and then some, the arithmetic of DiVenuti's lawyer was faulty. Even applying a twelve percent interest rate to the $59,000, that amounts to $3,540, and the lost rent could not have exceeded $4,800. The trial judge found that, in fact, the failure to pay the fire insurance proceeds immediately had not cost DiVenuti any lost rent at all because repair of the premises required more money than the full policy proceeds, took more than six months, and was, in fact, financed without resort to insurance proceeds.

[3]This figure was also puffed up. The total repairs to the fire damaged premises, when completed, came to $95,000.

for the insurance coverage should have been paid and October 1, 1986, when the judge found DiVenuti could and should have resolved the case, and $10,000 in counsel fees for the exertions of DiVenuti's lawyer through October 1, 1986. As to Utica, it knew from the outset that it was to indemnify Reardon and, by indirection, Manufacturers. Utica had, therefore, acted unfairly, and the c. 93A judgment against Reardon ran jointly and severally against it. Reardon and Utica have appealed.

1. *Denial of Reardon's motion to amend her answer.* On the first day of trial, which was more than four years after commencement of the action, Reardon moved to amend her answer by adding five affirmative defenses, including comparative negligence, estoppel, and waiver by Manufacturers.[4] Although she cast her motion as made under Mass.R.Civ.P. 15(b), 365 Mass. 761 (1974), to conform the pleadings to the evidence, such a motion lies only "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties," *ibid*, and Manufacturers actively resisted inclusion of the new matter. The judge properly treated the motion as made under paragraph (a) of rule 15. He denied the motion because made so late that it would have required a continuance of trial — for which all parties and witnesses had assembled — so that Manufacturers might prepare to meet the new issues which would have been interjected.

It is familiar ground that a trial judge should be generously disposed to motions to amend pleadings. "Leave shall be freely given," the rule says. Mass.R.Civ.P. 15(a), 365 Mass. 761 (1974). *Castellucci* v. *United States Fid. & Guar. Co.,* 372 Mass. 288, 289 (1977). Among the good reasons, however, for which a motion to amend may be denied are that no justification for the lateness of the motion is apparent (beyond counsel for the moving party having had a late dawning idea) and that one or more of the nonmoving parties would be caught off balance by the proffered amendment. *Id.*

---

[4]The other "affirmative defenses" were no more than denials of elements Manufacturers was bound to prove as part of its affirmative case, in any event.

at 292. *Mathis* v. *Massachusetts Elec. Co.*, 409 Mass. 256, 264-265 (1991). *Walsh* v. *Chestnut Hill Bank & Trust Co.*, 414 Mass. 283, 287 (1993). The judge was well within his discretion in denying the motion. See *Christopher* v. *Duffy*, 28 Mass. App. Ct. 780, 786 (1990).

2. *Whether the question of comparative negligence by Manufacturers should have been put to the jury.* Reardon argues that, during the course of the trial, evidence bearing on the question of comparative negligence on the part of Manufacturers was, in fact, received. Consent to litigate an issue may, indeed, be implied if evidence is received without objection *and* the non-objecting party can fairly be thought to have been made aware that the evidence goes to the unpleaded issue. *Wolfe* v. *Ford Motor Co.*, 6 Mass. App. Ct. 346, 355 (1978), *S.C.*, 306 Mass. 95 (1982). We have reviewed the portions of the transcript which Reardon says raised the issue of Manufacturers's negligence. Their bearing on that issue was remote: at best, subtly inferential. In such circumstances, a motion to amend to conform to the evidence is properly denied. *Hamed* v. *Fadili*, 27 Mass. App. Ct. 234, 241-242 (1989), *S.C.*, 408 Mass. 100 (1990). *Consolidated Data Terminals* v. *Applied Digital Data Sys., Inc.*, 708 F.2d 385, 396 (9th Cir. 1983). Furthermore, Reardon did not request a jury instruction on the issue of comparative negligence and did not object to the lack of such an instruction. See Mass.R.Civ.P. 51(b), 365 Mass. 816 (1974). Contrast *Boorstein* v. *Boston*, 28 Mass. App. Ct. 313, 318-319 (1990). The comparative negligence issue was lawfully excluded from the case.

As a third point of appeal, Reardon asserts error in the denial of motions she made to amend or alter the judgment or for a new trial. Her grounds were that the trial and judgment had gone wrong because they did not take account of Manufacturers's role in the events which caused Reardon to be liable to DiVenuti. From our conclusion that Manufacturers's share of the negligence, if any, was properly not a subject of the trial, it follows that the judge correctly denied the posttrial motions.

3. *Utica's appeal.* Utica protests that it was wrongly found to have acted unfairly and deceptively as to DiVenuti because (a) it justifiably took the position that the insurance bound with Manufacturers was in force at the time of the fire and, therefore, (b) Reardon had no liability to DiVenuti. By offering DiVenuti $30,000, Utica urges, it had acted generously and, hence, surely not unfairly or deceptively. The position is disingenuous and arch. To the extent that Manufacturers was liable by reason of the binder Reardon had issued as its agent, Reardon was in turn liable to Manufacturers for failure to follow through reasonably promptly on Manufacturers's instructions that it would not insure the locus. Reardon had committed an error of omission, the risk Utica had insured. Of all the parties, Utica was the one most obviously destined to pay what DiVenuti had insured the locus for, and, by offering only half the loaf, it made a major contribution to the wasteful litigation that followed.

It is not its duty to indemnify Reardon, however, that Utica is protesting (that was not part of the underlying litigation) but its c. 93A liability to DiVenuti, which sweeps along legal fees. There is, in fact, a solid basis on which Utica was free from liability to DiVenuti. The c. 93A violation asserted by DiVenuti rode piggyback on conduct defined as unfair and deceptive acts in G. L. c. 176D, § 3(9).[5] DiVenuti's property was business property and, as the trial judge observed, that characteristic of the property barred DiVenuti from claiming under G. L. c. 93A, § 9. His c. 93A claim had to be characterized as one made under G. L. c. 93A, § 11, i.e., a business against business c. 93A claim. A violation of G. L. c. 176D, § 3(9), does not support a § 11 claim under c. 93A. *Jet Line Servs., Inc.* v. *American Employers Ins. Co.*, 404 Mass. 706, 717 n.11 (1989). *Transamerica Ins. Group* v. *Turner Constr. Co.*, 33 Mass. App. Ct. 446, 452 (1992). Utica did not raise that issue either before the trial judge or on appeal. We will, therefore, let the

---

[5]Notably subparagraph (*f*) of subsection 9, as inserted by St. 1972, c. 543, § 1: "Failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear."

judgment against it stand. No injustice is done because, as we have observed, to the extent Utica does pay DiVenuti, it will not have to pay Reardon on its errors and omissions policy.

4. *Afterword.* At bottom, the legal issues presented on appeal are neither novel nor complex. We have described the proceedings at considerable length because they illustrate richly how the contemporary legal process, when thoughtlessly manipulated, wastes the time and resources of clients and legal institutions. Perhaps there are brilliant explanations, but, on the basis of the record, all parties deserve reproach. It did not require a prodigy of investigation and analysis by Manufacturers to recognize that it was bound on coverage its agent had neglected to cancel. Manufacturers would have spared everybody time and itself legal expense if it had paid the claim and looked to Reardon for reimbursement. At least it can be said for Manufacturers — or its counsel — that, when its position was starkly revealed by discovery, it offered the policy limits and DiVenuti's legal expenses. Utica, as we have commented, was liable on its errors and omissions coverage issued to Reardon and, so far as appears, engaged in reflexive withholding and half measures. The prize for obduracy and possibly avarice belongs to trial counsel for DiVenuti who, when offered the policy proceeds and reimbursement of legal costs inside of six months of the fire, proceeded to make overreaching demands and drove the case to fruitless trial. If it were in our power, i.e., if the statute did not prescribe them, we would remove the $10,000 award of legal fees from the judgment for DiVenuti.

When conduct of lawyers does not present obvious infractions of disciplinary rules, perhaps we should shrug and write off banally obstructive conduct as just another day at the office. Such tolerance, however, may contribute passively to a poisoning of the legal system that makes it, often, the target of public scorn and discontent. There should be no embarrassment for a lawyer to embrace aspirational values of the profession: to plead honestly and to redress grievances. The Legislature may wish to consider whether there should be

added to G. L. c. 176D, § 3, a reciprocal penalty for an insured who declines a prompt, fair, and equitable settlement offer by an insurer.

The judgment is affirmed. No party is to have costs on appeal.

*So ordered.*