Merrigan, J.
The plaintiffs Paul C. and Lorie J. Dick brought suit against the defendant George A. Lussier alleging breach of contract, fraudulent concealment, negligence and violations of G.L.c. 93A concerning the construction of a single family home for the Dicks by Lussier. Lussier denied liability and counterclaimed for the balance owed on a note for some construction items not covered in the bank financing.
After trial, the court found for the Dicks and awarded damages for breach of implied warranty and negligence with respect to the installation of roof shingles. The court found for Lussier regarding other claims by the Dicks including those concerning the water quality and the water filtration system. The court found for Lussier on the counterclaim on the note and awarded damages. Among the subsidiary findings made by the judge concerning the purchase and sale agreement, the court found that “ [t]he water filtration system was to be installed by the defendant, the contractor.” The judge also made a finding “that the test results did show high various mineral contents, high iron and high torpidity, but those mineral and torpidity contents were not the subject of the purchase and sale agreement, other than the fact that filters for sediment and minerals were to be funded by the plaintiffs, and as to mineral and torpidity contents was [sic] the obligation of the plaintiffs.”
The Dicks appealed and their arguments on appeal concern issues related to the water quality and the filtration system. Unless clearly erroneous, we are bound by the trial judge’s findings of fact. We may, however, find additional facts from the evidence, especially where uncontroverted, and on the basis of all facts, review the conclusions of law by the trial judge on the evidence presented.
Factual background. From the record, there is evidence to warrant the following facts. In April 1990 the Dicks attended a seminar sponsored by Lussier for prospective home buyers. The Dicks became interested in building a new home and met with Lussier and his real estate brokers several times thereafter regarding building a house and selecting a site. An architect, engaged by Lussier, drew up a set of house plans and the Dicks selected a lot in a development in Spencer owned by Lussier. The Dicks relied upon Lussier in all respects for his expertise in designing and constructing their new home. Other than the selection of carpet colors and similar choices, Lussier told the Dicks that — as the general contractor — *152 he would take care of everything. The agreement between them was reduced to a purchase and sale agreement.
The agreement provided, in part, as follows: Lussier agreed to construct a dwelling in conformity with specifications in Exhibit B to the agreement. Exhibit B provided that Lussier would furnish all materials and perform all work necessary for construction of the dwelling. Under Section P, entitled “Water Supply,” the agreement stated a well would be the source of the water supply; that the well contractor would guarantee 5 gallons per minute for four hours with zero bacteria; that any filters for sediment or minerals if necessary, to be funded by the buyer. Under a section entitled MISCELLANEOUS, subtitled ‘Additional Work to be completed,’ the contract stated, Water filtration system to be installed.
During construction, Lussier subcontracted with WellTech for the well drilling. Lussier also made arrangements with WellTech for the initial water quality tests that were necessary for the Dicks’ mortgage financing and to satisfy federal, state and municipal environmental and health codes. Lussier also made arrangements for WellTech to install a water filtration system with specifications responsive to the water quality tests. This first set of tests were performed on May 2,1991. WellTech utilized the services of a commercial lab for water quality testing. At no time did Lussier consult with the Dicks regarding the subcontract or any arrangements with WellTech concerning the water filtration system. There is nothing in the purchase and sale agreement that specifically establishes a separate relationship between the Dicks and WellTech. Likewise, there was no written or verbal agreement between the Dicks and WellTech nor was there any such agreement between the Dicks and Lussier regarding WellTech.[2] The May 2 water quality tests obtained by WellTech for Lussier revealed that the iron,' manganese and turbidity exceeded state and federal standards and as a result, the water was not fit for human consumption. The results of this test were used by WellTech to configure the water filtration system that was installed. The system was a minimal filtration system and did not as designed and installed provide for an exterior use bypass so that water for the lawn would circumvent the filter.
A second set of water quality tests were performed on August 20,1991. These tests were just prior to the August 27,1991 closing and the results indicated water quality results improved sufficiently to seemingly satisfy mortgage lending and meet federal, state, and local legal requirements. The trial judge made the general finding that “water samples were taken from the well installed on the plaintiff’s property, and that the samples were taken by WellTech Corporation." This finding as it relates to the August 20,1991 tests is “clearly erroneous.” Mass. R. Civ. R, Rule 52(a). The owner of WellTech was called as a witness by Lussier and he unequivocally testified that the August 20, 1991 water sample was not collected by WellTech. The records of the commercial lab (as testified to by its employee) indicate that the August 20, 1991 water sample was delivered by one of Lussier’s employees, and not a WellTech employee. Moreover, there is no affirmative evidence in the record that the August 20,1991 water sample was obtained and delivered to the lab by WellTech.[3] We conclude, based upon the evidence presented, that the August 20 water sample was obtained by Lussier and delivered for testing *153 to the lab.[4]
The Dicks only became aware of the May 2,1991 and August 20,1991 water test results when information was presented at the closing. Previously, the Dicks had not been consulted in any respect about the two tests, the significant discrepancies in test results nor given any options concerning the filtration system or any design features. Immediately upon occupancy, the Dicks found that the water made their clothes discolored and that there were orange rust stains in the tub and toilet. The water had a heavy odor and was not potable. When the Dicks complained to Lus-sier, he completely disavowed responsibility and referred them to WellTech. As a result of continuous problems with the water, the Dicks had another test done in December 1992. The results from these tests were very similar to the tests in May 1991. Unable to obtain any satisfaction from WellTech, in 1991 and 1992, in January 1993, the Dicks engaged the services of another company and eventually installed an enhanced water filtration system. The cost was $4400.[5]
Legal analysis of the facts. The purchase and sale agreement required Lussier to furnish all materials and perform all work necessary to construct the dwelling. The agreement required Lussier to install the water filtration system. The Dicks were consumers who had no knowledge or expertise in these matters and they relied upon Lussier for his experience and knowledge. Lussier did not convey, nor did the language of agreement, that it was the Dicks’ responsibility to understand the water quality tests and select appropriate equipment for the water filtration system. Lussier was the general contractor and WellTech was another subcontractor not unlike the excavator, the electrician, or the plumber. WellTech had done work for Lussier on many previous occasions and it was Lussier who made contact with WellTech and controlled all aspects of the job for the Dicks. The Dicks had no contact or involvement with WellTech until after the closing when they began to have water quality problems.
There is nothing in the agreement that exempts Lussier from liability for breach of warranty or negligence for the inadequacy of the installed water filtration system. Lussier’s contention that the contract language — that the filtration system was “to be funded by the buyers” — relieved him of liability for this aspect of the construction is devoid of any merit. The whole contract was funded by the buyers. This particular language in the agreement merely reflects the understanding of the parties that the cost of the filtration system and work would be in addition to the construction price in the agreement — an “extra” cost added to the basic contract cost. It was done this way because it was an aspect of the construction that had variability to the price. This interpretation is consistent with Lussier’s own testimony at trial concerning the purpose of this particular language. If the agreement was intended to exclude Lussier from liability for the filtration system, it would have expressly so provided.
As the general contractor, Lussier had both implied and contractual warranty obligations to construct a home for the Dicks in a good workman-like manner that was free from material defects. Lussier also had a duty to use reasonable care in performing his responsibilities under the purchase and sale agreement. Lussier *154 also had a more specific warranty obligation on the basis of the terms of the purchase and sale agreement to cause the installation water filtration equipment that was fit for its intended “particular” purpose. Because of the significant water quality problems revealed by the May 2, 1991 tests, Lussier knew that the Dicks needed filtration equipment for their water supply. Since he never disclosed the results to them or otherwise caused WellTech to do so, Lussier knew that the Dicks were acting in reliance upon his skill and judgment as the general contractor. Under the terms of the purchase and sale agreement, Lussier’s warranty obligations and duty of reasonable care extended to the selection of appropriate water filtration equipment; adequate and timely disclosure of the water quality test results to the Dicks; and providing the Dicks with various design and system options and advising them accordingly. Lussier’s failure to obtain appropriate filtration equipment breached the general warranty obligation to construct a house free from material defects and a specific implied warranty obligation that the equipment be fit for its intended particular purpose.[6]
Lussier did not make timely disclosure of the water quality tests performed nor did he provide the Dicks with design options and choices for the water filtration system. Lussier also failed to use reasonable care in the selection of an appropriate water filtration system. Finally, Lussier completely failed to stand behind the water filtration system.[7] Lussier’s conduct breached the warranty that attended the construction of the home for the Dicks and breached the duty of care required of him as general contractor with regard to the performance of his duties under the contract.
Lussier’s refusal to stand behind the filtration system breached the general and specific warranty obligations arising under the purchase and sale agreement, constitutes an unfair and deceptive action by him, and subjects him to c. 93A liability. “A material and substantial breach of warranty is sufficient basis for recovery under G.L.c. 93A.” Hodgson v. Phillip, 1991 Mass. App. Div. 67, 68. “A practice is unfair if it is ‘within ... the penumbra of some common-law, statutory or other established concept of unfairness;... is immoral, unethical, oppressive, or unscrupulous; [and] ... causes substantial injury to [] [consumers]’,” Linkage Corporation v. Trustees of Boston University, 425 Mass. 1, 27 (1997), quoting PMP Assocs., Inc. v. Globe Newspapers Co., 366 Mass. 593, 596 (1975). Lussier’s action in disregarding known contractual arrangements, may, if in violation of contractual warranties, constitutes an unfair and deceptive act or practice as contemplated by c. 93A. cf. Anthony’s Pier Four, Inc. v. HBC Associates, 411 Mass. 451, 474 (1992). Negligence, constituting a breach of warranty, in the installation of the water filtration system, also establishes a violation of c. 93A. Squeri v. McCar-rick, 32 Mass. App. Ct. 203 (1992). Lussier’s attempt to avoid responsibility for the water filtration system that was materially deficient from the time it was installed, and his shifting of all liability to WellTech when no language in the contract plausibly supports such action, establish wilful and knowing violations of c. 93A, sec. 2. This is particularly so in light of Lussier’s direct involvement in the August 20 testing and his exclusive interaction with WellTech throughout the construction period.
As the general contractor, Lussier is liable to the Dicks on their claims for *155 breach of warranty, negligence and violations of G.Lc. 93A.[8]
Accordingly, so much of the judgment as to each party that relates to the dispute concerning the water filtration system is to be vacated. This case is remanded to the District Court for a hearing on the issue of damages, which shall be doubled, and for a determination of attorney’s fees. An amended judgment shall enter following such hearing.

 The Dicks and WellTech had their first contact after the closing when Lussier referred the Dicks to WellTech for water quality problems.

 Although the evidence is sufficient to permit a finding that water sample for the August 20 test was obtained from a source other than the Dick’s well, it is unnecessary for us to make and rely upon such a finding. The erroneous finding that WellTech produced the August 20 water sample in combination with the judge's erroneous interpretation of the contract require reversal in any event.

 The August 20,1991 water tests show that the manganese level was still excessive which means that the filtration system was deficient even before the closing on August 27, 1991. There is no evidence that Lussier explained the manganese problem to the Dicks before or at the closing.

 Other losses suffered by the Dicks include the value of clothing, uniforms, sheets, towels, etc. destroyed by the water used for washing as well as the value of appliances such as the washing machine, dishwasher, etc. likewise damaged or destroyed.

 Implicit in the trial judge’s ruling for Lussier on the claims regarding the filtration system is his legal conclusion that, although according to the judge's finding “the water filtration system was to be installed by the Defendant,” Lussier and the Dicks had agreed that WellTech was an independent contractor working for the Dicks. We find no evidence in the record to support this conclusion.

 WellTech is arguably jointly liable. Neither the Dicks nor Lussier brought WellTech in as a party.

 The Dicks’ argument on the 93A claim is minimally sufficient to present an appellate issue. Counsel’s oral argument and references in passing in the brief barely preserve the issue on appeal. More in depth legal analysis is warranted.