ANTHONY ACETO & another[1] *vs.* MATTHEW DOUGHERTY
& others.[2]

Middlesex. March 4, 1993. - June 28, 1993.

Present: LIACOS, C.J., NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Negligence*, Medical malpractice, Standard of care. *Medical Malpractice*,
   Standard of care, Consent to medical treatment. *Doctor*, Duty to dis-
   close to patient. *Practice, Civil*, Instructions to jury.

At the trial of a medical malpractice action seeking damages for physical
   and emotional harm suffered as a result of a perforated colon allegedly
   caused by the negligent performance or supervision of a colonoscopy
   undertaken without the plaintiff's informed consent, there was no error
   in the judge's refusal to instruct the jury that the defendants' conduct
   should be held to the standard of the average qualified physician engag-
   ing in the practice of colonoscopy where, as to both defendants in ques-
   tion, there was no evidentiary basis for the requested instruction. [658-
   659]
At the trial of a medical malpractice action seeking damages for physical
   and emotional harm suffered as a result of a perforated colon allegedly
   caused by the negligent performance or supervision of a colonoscopy
   undertaken without the plaintiff's informed consent, there was no error
   in the judge's refusal to instruct the jury concerning the plaintiff's right
   to be informed of his option under G. L. c. 111, § 70E, to refuse treat-
   ment by students or certain other staff personnel, and that failure of
   any of the defendants so to inform the plaintiff would constitute negli-
   gence, where the plaintiff's requested instruction was not pertinent be-
   cause the procedure in question was not performed by students, but by
   fully licensed physicians; where the plaintiff failed to show, with regard
   to one defendant, that any failure on his part to disclose material infor-

---

[1]Bea Dantona, administratrix of the estate of Lena Aceto. The suit
originally commenced with the plaintiff's wife, Lena Aceto, as a party. She
died during the pendency of the action. The court-appointed representative
of Aceto's estate, Dantona, was substituted as party plaintiff. We refer to a
single plaintiff.

[2]Rick Schmidt, Paul Shellito, and Massachusetts General Hospital. At
the time the procedure was performed on the plaintiff all of the physicians
were employed by the defendant hospital.

mation to the plaintiff was causally related to the plaintiff's injury; and where, with regard to another defendant, even if he had an obligation to disclose the extent of his medical experience, the disclosure would not have advanced the plaintiff's cause. [659-662]

CIVIL ACTION commenced in the Superior Court Department on September 12, 1988.

The case was tried before *Gordon L. Doerfer*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Ned C. Lofton* for the plaintiffs.

*Edward F. Mahoney* for Matthew Dougherty & another.

*M. Catherine Huddleson* for Rick Schmidt.

LYNCH, J. In this medical malpractice action Anthony Aceto (plaintiff) originally sought damages from four defendants: Dr. Matthew Dougherty, Dr. Rick Schmidt, Dr. Paul Shellito, and Massachusetts General Hospital (MGH), for physical and emotional harm suffered as a result of a perforated colon allegedly caused by the negligent performance or supervision of a colonoscopy undertaken without his informed consent. There was a directed verdict in favor of defendant Dr. Shellito, which has not been appealed. In response to special verdict questions, the jury found that the remaining defendants were not negligent and that the plaintiff had given informed consent to the performance of the colonoscopy. Judgment entered dismissing the entire action against all of the defendants. A motion for a new trial was denied. The plaintiff appeals arguing that the judge erred in his jury instructions by: (1) failing to provide the proper standard of care for the jury to follow in assessing the defendants' conduct; and (2) refusing to instruct the jury concerning the plaintiff's right to refuse treatment by students or medical personnel under G. L. c. 111, § 70E (1990 ed.). We transferred the case here on our own motion and now conclude that there was no error.

The jury could have found the following facts. The plaintiff suffers from colonic polyps which cause periodic bleeding and require annual or semi-annual colonoscopy examinations.[3] At the recommendation of the plaintiff's cardiologist, the plaintiff utilized the surgical clinic at MGH for periodic follow up of his colonic polyps. Through the surgical clinic, the plaintiff underwent colonoscopies in 1980, 1982, 1983, and 1984.

On September 13, 1985, his cardiologist again referred the plaintiff to the surgical clinic where the plaintiff was examined by Dr. Jonathan Woodson. Dr. Woodson determined that a repeat colonoscopy would be appropriate, obtained the plaintiff's written consent to the colonoscopy, and scheduled the procedure. The consent form contained a handwritten note indicating that Dr. Woodson had discussed the inherent risks of the colonoscopy including the potential for perforation of the colon.[4] Dr. Woodson did not discuss the fact that residents or fellows would be involved in the procedure.

The plaintiff was admitted to MGH on September 29, 1985, in preparation for his colonoscopy. He testified that he did not receive any writing, brochure, or printed document informing him of his rights as a patient. The following day, the procedure was performed in the surgical endoscopy unit by Dr. Dougherty and Dr. Schmidt, members of the west surgical service.[5] The plaintiff claims that the defendants did

[3]Endoscopy is the insertion of a semi-flexible tube (scope) into various cavities of the body for the purpose of diagnosis, examination, or medical treatment. Colonoscopy is one form of such procedures where the instrument is placed into the colon.

[4]Dr. Woodson testified that it was his customary practice to "prepare the consent form with additional comments [regarding the particular procedure] before going in to see the patient." After discussing the procedure and the risks involved Dr. Woodson would then have the patient sign the form as an indication of his understanding and consent to the procedure.

The plaintiff, however, testified that the consent form did not contain the handwritten words "perforation requiring abdominal operation" when he signed the form. He further testified that no one at the clinic or in the hospital informed him of the risk of being injured during the colonoscopy.

[5]The west surgical service was divided into three teams, each team consisting of a senior resident, junior resident, and an intern. One team would

not inform him of their respective status as a resident and a fellow.

Dr. Dougherty testified that, although he could not recall specifically whether he had informed the plaintiff that he was a resident, he stated that he routinely introduced himself as a "resident on Dr. Rattner's service." Dr. Schmidt introduced himself as the physician assisting Dr. Dougherty. Dr. Dougherty had graduated from medical school in 1984 and was in his second year of residency training in general surgery at MGH.[6] For the months of September and October of 1985, Dr. Dougherty was assigned to the surgical endoscopy unit. Prior to performing the plaintiff's colonoscopy, Dr. Dougherty had participated in eight colonoscopies, completing four, while four were finished by Dr. Schmidt. Dr. Schmidt had completed his residency and had elected to pursue a one and one-half year fellowship with six months of this extra time to be spent in the area of surgical endoscopy.[7] Before assuming the responsibility for the plaintiff's colonoscopy, Dr. Schmidt had participated in 137 colonoscopies.

Dr. Dougherty initially operated the hand controls of the colonoscope inserting it into the plaintiff's rectum and passing it into his sigmoid colon. Dr. Schmidt observed Dr. Dougherty through the teaching lens and instructed him on how to proceed. When Dr. Dougherty determined that he could not safely pass the colonoscope beyond the junction of the rectum and sigmoid colon (approximately four to six inches from insertion), Dr. Schmidt took control and finished the procedure. Dr. Shellito signed the operative report.[8] Ac-

---

be assigned to the emergency room, and two teams would be assigned to the ward.

[6]The term "resident" denotes a medical school graduate who is pursuing training in a chosen field of medicine to become qualified in a specific area. At the completion of the residency, the physician is eligible to take a national board examination to become certified in the field.

[7]A "fellow" is a physician who has completed the residency in his chosen specialty but has elected to pursue further training in a subspecialty for which there are also board certification examinations.

[8]In his memorandum of decision on the motions for directed verdict, the judge found that, although Dr. Shellito was not present in the room during

cording to the defendants, the colonoscopy was uneventful. The plaintiff was discharged from MGH the following day without evidence of complications. On October 4, 1985, however, the plaintiff returned to MGH by way of ambulance complaining of abdominal pain. A perforation was found in the mid-portion of his sigmoid colon (approximately ten to twelve inches into the colon) requiring surgical repair and subsequently extensive rehabilitation.

1. *Standard of care applicable to residents and fellows.* The plaintiff contends that the defendants held themselves out to be specialists in colonoscopy by their appearance, introduction as physicians, and performance of the colonoscopy. As such, the plaintiff argues that these factors mandated a jury instruction that the defendants' conduct should be held to the standard of the average qualified physician engaging in the practice of colonoscopy.

The evidence was undisputed that Dr. Dougherty inserted the colonoscope into the plaintiff's rectum and passed it into the sigmoid colon for approximately four to six inches and that the perforation occurred at ten to twelve inches into the colon. Thus there was no evidence establishing a causal link between Dr. Dougherty's manipulation of the colonoscope and the plaintiff's perforation. The jury's finding in favor of Dr. Dougherty, therefore, was compelled by the plaintiff's failure to establish that the physician's conduct caused his injuries regardless of the standard of care to be applied. *Forlano* v. *Hughes,* 393 Mass. 502, 507-508 (1984), and cases cited.

The plaintiff's expert, Dr. Oscar Martinez, testified that, despite Dr. Schmidt's completion of a residency program and partial completion of a fellowship program, he did not have the training or experience in colonoscopy to act as a qualified supervisor. On cross-examination, Dr. Martinez agreed with

the procedure, he did sign the operative procedure report after the problems with the procedure became known to him. The judge ruled that Dr. Shellito's participation in the procedure was nothing more than to be available if the other physicians needed assistance or advice and not a retroactive acceptance of responsibility for the procedure.

a statement published by The American Society for Gastro-Intestinal Endoscopy regarding the standards of training and practice minimally required for endoscopic experience before being competent to do them independently as being fifty procedures. Dr. Martinez also testified that he was competent himself independently to perform colonoscopies after completing 100 procedures.

The defendants' expert, Dr. John A. Coller, testified that perforation of the colon is an inherent risk in a colonoscopy. He would anticipate that a fellow such as Dr. Schmidt, who had participated in 137 colonoscopies, would be a competent teacher. He further testified that Dr. Schmidt's education, training, and the number of procedures performed would qualify him independently to perform colonoscopies and to supervise a second-year resident.

Since the opinion of Dr. Martinez concerning Dr. Schmidt's lack of skill and training related only to his lack of experience as a supervisor, there was no evidentiary basis for finding that he lacked the skill and experience to operate the scope or that he lacked the skill of the average qualified physician specializing in the field of surgical endoscopy. As to both Dr. Dougherty and Dr. Schmidt, therefore, there was no evidentiary basis for the requested instruction. In these circumstances, the judge was not wrong in refusing to give the instruction. See *Commonwealth* v. *Egerton*, 396 Mass. 499, 504 (1986); *Holmes* v. *Sullivan*, 241 Mass. 195, 196 (1922); J.R. Nolan, Civil Practice § 706, at 655-656 (2d ed. 1992).

2. *Informed consent under G. L. c. 111, § 70E, to refuse treatment by a resident or a fellow.* The plaintiff requested that the jury be instructed that G. L. c. 111, § 70E, required that the plaintiff be informed of his right to refuse to be treated by students or other facility staff and that, if any of the defendants failed so to inform the plaintiff, such failure constituted negligence.

In a separate memorandum on requests for jury instructions and motions for directed verdicts, the judge ruled as follows:

"The case at bar is a medical malpractice claim, not a claim for vindication of the rights created by sec. 70E. The court rules that, in the context of this case, that statute, upon reflection and analysis, does not create for a patient rights regarding the appropriate standard of medical care or to informed consent greater than is provided by the common law.

"In particular, it does not expand the definition of what is 'material' that a physician should disclose. The analysis continues to be, first, what information did the physician possess, or reasonably should have possessed relating to the risks and alternatives (which is a matter for expert testimony); and second, what part of that information he reasonably should have recognized as material and shared with his patient, which is a matter which the jury can decide without expert testimony.

"In this case the risk was of perforation or damage to the wall of the colon. The degree of risk was a matter of conflicting expert testimony. But the degree of risk relates only to whether it was material to disclose it. No party disputes that it was material to disclose the risk of perforation.

"Everyone agreed at trial that unskillful performance of a colonoscopy is not a 'risk' in the sense of a risk benefit analysis material to a decision on informed consent. The court does not read the law of informed consent to require a physician to raise the possibility with a patient that he might perform the operation unskillfully. If the jury finds that the procedure was performed unskillfully under the appropriate legal standard so as to perforate or injure the wall of the patient's colon the patient will prevail in any event. Insofar as a failure to provide informed consent is malpractice, entitling one to recover, it is to cover those situations where there was no other malpractice, but rather the actual occurrence of an untoward event which was a material risk, which occurred, (not because of negligence), and which should have been disclosed and consented to.

"The jury will be instructed consistently with the foregoing."

The judge was not obligated to give the requested instruction.

General Laws c. 111, § 70E, provides in pertinent part: "Every patient . . . shall be provided by the physician in the facility the right . . . to refuse to be examined, observed, or treated by students or any other facility staff without jeopardizing access to . . . medical care."

First the plaintiff's request was not pertinent because the procedure in question was not performed by students, but by physicians. The plaintiff advances no reasonable argument that the words of the statute "or other facility staff" were intended to include fully licensed physicians. That issue, therefore, is not before us. On this basis alone the judge was correct in refusing to give the requested instruction. Furthermore, in order to recover for a physician's failure to obtain informed consent, the plaintiff must show not only that the physician failed to disclose material information to the patient, but also that the physician's failure in this regard is causally related to the patient's injury. *Halley* v. *Birbiglia*, 390 Mass. 540, 548 (1983). *Harnish* v. *Children's Hosp. Medical Ctr.*, 387 Mass. 152, 155 (1982).

We are content that Dr. Dougherty's conduct could not have been found to be causally related to the plaintiff's injury. Therefore, no error could arise in the claim against him even if, assuming arguendo, the requested instruction was required. "An unrevealed risk that should have been made known must materialize, for otherwise the omission, however unpardonable, is legally without consequence." *Harnish* v. *Children's Hosp. Medical Ctr.*, *supra* at 157-158, quoting *Canterbury* v. *Spence*, 464 F.2d 772, 790 (D.C. Cir.), cert. denied, 409 U.S. 1064 (1972).

Even if we assume that there was an obligation on Dr. Schmidt's part to disclose his experience, the plaintiff's cause is not advanced. According to undisputed expert testimony, a physician is competent to perform and supervise

colonoscopy procedures after having performed at least fifty of them. There was evidence that Dr. Schmidt had participated in 137 colonoscopies prior to the plaintiff's procedure. The evidence warranted finding Dr. Schmidt qualified as an experienced physician and the jury found no negligence on his part. No error arises from the judge's refusal to instruct the jury as requested on G. L. c. 111, § 70E.

*Judgment affirmed.*