Leibensperger, Edward P., J.
Plaintiff, Daphne Bryant, a one-time patient at Brigham and Women’s Hospital (“BWH”), claims that her confidential medical information was wrongfully discovered and disclosed by a hospital employee to unrelated third parties. She sues the employee, defendant Shona Jackson, for negligence and claims that BWH is vicariously liable for Jackson’s negligence. Bryant also sues defendants, Christine Collins and BWH, for negligent supervision and training of Jackson. Finally, Bryant sues BWH for violation of G.L.c. 93A.
BWH and Collins move for summary judgment contending, among other things, that they cannot, as a matter of law, be held vicariously liable for the conduct of Jackson. In addition, BWH and Collins contend that there is insufficient evidence in the record to sustain Biyant’s claim for negligent supervision and training.
BACKGROUND
The following facts are taken from the parties’ Statement of Material Facts and the record submitted with that Statement.
Biyant was a patient at BWH where she received treatment for HIV and related disorders. She was first diagnosed as being HIV positive in 1997. According to Biyant, she diligently kept secret her HIV diagnosis from her family (except for her mother) and others.
Jackson was an employee of BWH, hired in 1987. At the time relevant to the complaint, she was an “access facilitator” in the Patient Access Services Department. The position of access facilitator requires an employee to access patient information in order to perform her job function. The job function includes admitting patient’s administratively, assigning them to a unit in the hospital and assisting with appropriate billing. In the course of performing her job duties, Jackson was required to access confidential information concerning patients thousands of times per year. As part of her employment, Jackson received formal training with respect to maintaining the confidentiality of patient medical information. For example, in 2005 she received training with respect to the Health Insurance Portability and Accountability Act (“HIPAA”) with respect to confidentiality of patient information. The record contains a 2006 confidentiality agreement signed by Jackson (BWH contends in its argument that such agreements were renewed on a regular basis) stating, among other things, “I agree not to disclose or discuss any patient . . . information with others, including friends or family who do not have a need-to-know. ”
BWH performed periodic audits and quality checks of employees who may access patients’ medical records. In addition, all employees, from the time of orientation and throughout their employment, receive informal training and reminders to maintain patient confidentiality, including HIPAA fairs eveiy year and posters in elevators.
On June 11, 2007, Biyant complained to BWH about Jackson. Jackson was an acquaintance of Biy-ant who grew up with Bryant in the same neighborhood. They shared a mutual friend, Toshia Moore. Bryant complained that Jackson had revealed Biyant’s confidential medical information, including that Biyant was HIV positive, to Moore on June 9, 2007 when Moore was at the hospital.
A formal Privacy Complaint Intake Form was prepared by BWH. BWH audited its computer system to determine whether Jackson had accessed Biyant’s medical records for the period beginning January 1, 2007. The audit indicated that there had been no access of Biyant’s medical records by Jackson. At the request of Bryant, BWH conducted a further audit to include 2006 records. That audit showed that Jackson had accessed Biyant’s electronic medical records on *426 three occasions; January 5, January 26 and September 26, 2006. Jackson contended that she saw Bryant’s HIV medical record while conducting a routine review of BWH’s admissions log. BWH’s investigation determined that Jackson had inappropriately accessed Bryant’s medical records. Jackson was terminated from her employment at BWH.
Whether Jackson, after inappropriately accessing Bryant’s records, disclosed to any person that Bryant was HIV positive is disputed. Bryant testified that Moore, a childhood friend of hers, told Bryant about a conversation Moore had with Jackson. Moore and Jackson were talking about Bryant’s health problems, in general, when Jackson told Moore that Bryant was HIV positive. Bryant also claims that Moore, once she knew the information from Jackson, told additional third parties about Bryant’s diagnosis of HIV positive, including Bryant’s children.
The summary judgment record includes an affidavit from Moore. In the affidavit Moore admits that she and Jackson had a brief conversation “about Daphne’s ongoing health problems.” Moore says in the affidavit that she said to Jackson “I wish she [Bryant] would hurry up and get a new kidney” and [Jackson] stated something to the effect of Daphne has other health stuff going on. Moore then denies that Jackson told her that Bryant was HIV positive. In addition, Moore swears that Bryant, herself, told Moore that she was HIV positive in 2004.
In her deposition, Jackson, also, denied that she ever mentioned Bryant’s HIV to Moore. Jackson admitted, however, that she had a conversation with Moore in the 2006-2007 period when Jackson asked Moore how Bryant was doing because she (Jackson) had heard Bryant had cancer. There is no evidence that the conversation between Jackson and Moore was connected in any way with Jackson’s duties at the hospital. Instead, the evidence shows only that Jackson and Moore were gossiping about a mutual friend from childhood.
Bryant submitted an affidavit from family members and others disputing the affidavit from Moore. In particular, family members disputed portions of Moore’s affidavit in which she stated that she did not disclose to them Bryant’s HIV status. Thus, the credibility of Moore is at issue. In addition, the credibility of Jackson is at issue because the jury could choose to disbelieve Jackson’s denial of disclosure of Bryant’s HIV status, especially given Jackson admission of discussing other issues of Bryant’s health with Moore.
Bryant claims that after Jackson disclosed Bryant’s illness to Moore, she was forced to admit to family members and to others that she was HIV positive. Bryant alleges that she became despondent and depressed as a result of the disclosure and suffered damages.
Collins was Jackson’s supervisor. There is no evidence in the record that Collins, or anyone else at BWH, knew, prior to Bryant’s complaint in 2007, of Jackson’s unauthorized access of Bryant’s medical information. In addition, the record contains BWH’s statement that Jackson, prior to the Bryant complaint, was never the subject of discipline related to access to confidential patient information.[2] The record contains no specific practice, procedure or policy that Bryant claims should have been followed by Collins and BWH but was not. Bryant offers no expert evidence with respect to whether BWH’s training and supervision of medical records personnel was below the standard of care required of a medical provider like BWH.
DISCUSSION
A. Standard
Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Corn, 390 Mass. 419, 422 (1983). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and showing that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence negating an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of her case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond with evidence of specific facts establishing the existence of a genuine dispute. Pederson, 404 Mass, at 17. An adverse party cannot defeat a motion for summary judgment merely by resting on her pleadings and assertions of disputed facts, rather she must set forth specific facts with affidavits, deposition testimony, answers to interrogatories, or admissions on file -.showing that there is a genuine issue for trial. Mass.R.Civ.P. 56(c). When deciding a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party, but does not weigh evidence, assess credibility, or find facts. Attorney Gen. v. Bailey, 386 Mass. 367, 370-71 (1982).
B. Analysis
1. Dissemination of Bryant’s Confidential Information.
The first argument by BWH and Collins for summary judgment is that Bryant cannot support her claim that Jackson disseminated her confidential information. While defendants admit that Jackson improperly accessed Bryant’s medical records, without dissemination they contend that plaintiff is unable to prove that the access caused her any damages. As described above, I find that there are genuine issues of material fact regarding dissemination. The credibility of Moore and Jackson is in dispute. Bryant is *427 entitled to have a juiy evaluate the credibility of her testimony as well as the testimony of Moore, Jackson and others regarding whether Biyant’s confidential medical information was disseminated. Thus, this basis for defendants’ motion for summary judgment is rejected.[3]
2. Liability for Negligent Supervision or Training
Even if Jackson disseminated Biyant’s confidential information, Collins and BWH contend that there is no evidence from which a jury could find that they were negligent with respect to supervising, training or hiring Jackson. I agree.
Biyant does not contend that Collins or anyone else at BWH knew that Jackson accessed Bryant’s medical information prior to Bryant initiating her complaint regarding the dissemination. She fails to offer any evidence from which a juiy could find that the conduct of Collins and BWH fell below the standard of care.[4] Biyant does not contend that any specific act should have been done by Collins and BWH or that Collins and BWH omitted any training or supervision that should have been provided. Moreover, in order to evaluate whether Collins and BWH complied with the standard of care for a hospital with respect to practices and policies for training and supervising workers who, according to their job duties, have access to medical records, Biyant would be required to offer expert testimony. Hospital practices and policies under HIPAA and otherwise are not in the experience or common knowledge of an average juror. A claim of negligence in this regard is akin to a claim that a professional committed malpractice. In those kind of cases, an expert witness must support a plaintiffs claim in order to avoid summary judgment or a directed verdict. See Herbert A. Sullivan, Inc. v. Utica Mutual Ins. Co., 439 Mass. 387, 402-03 (2003) (“Only where professional negligence is so gross or obvious that jurors can rely on their common knowledge to recognize or infer negligence may the case be made without expert testimony.”); Aceto v. Dougherty, 415 Mass. 654, 660 (1993) (alleged negligence in obtaining informed consent requires expert testimony); Fishman v. Brooks, 396 Mass. 643, 647 (1986) (expert testimony usually required for attorney negligence).
Biyant’s claim for negligent supervision and training is entirely unsupported. Summary judgment dismissing this claim against Collins and BWH will be granted.
3. Strict Liability of BWH
Bryant asserts two grounds for holding BWH strictly liable for the conduct of Jackson if it is determined by the juiy that she disseminated Biyant’s HIV condition. First, she argues that BWH is vicariously liable for the acts of its employee, Jackson. Second, she contends that G.L.c. Ill, §70F makes BWH strictly liable for a violation of G.L.c. 93A.
(a) Vicarious Liability
An employer may be held liable for the acts of its employees under the principle of vicarious liability. “Liability on those grounds ‘is the proposition that an employer, or master, should be held vicariously liable for the torts of its employee, or servant, committed within the scope of employment.’ ” Petrell v. Shaw, 453 Mass. 377, 384 (2009) (summary judgment for employer where acts of employee outside the scope of employment), citing Dias v. BrighamMed.Assocs., 438 Mass. 317, 319-20 (2002). Vicarious liability of an employer recognizes the principle that “as between two innocent parties—the principal-master and the third party—the principal-master who for his own purposes places another in a position to do harm to a third party should bear the loss.” Kansallis Finance Ltd. v. Fern, 421 Mass. 659, 664 (1996). That principle, however, is limited. “[W]here the servant acts beyond the scope of his employment he is more like a thief who causes harm with an instrumentality he had no right to use” and vicarious liability of the employer will not attend. Id. at 665-66.
For an employee’s conduct to be within the scope of employment it must be of the kind she is employed to perform, occur substantially within the authorized time and space limits and be motivated, at least in part, by a puipose to serve the employer. Lev v. Beverly Enterprises-Massachusetts, Inc., 457 Mass. 234 (2010), citing Restatement (Second) of Agency §228 (1958).[5] Stated another way, if the employee “acts from purely personal motives ... in no way connected with the employer’s interests, he is considered in the ordinaiy case to have departed from his employment, and the master is not liable.” Pinshaw v. Metropolitan District Commission, 402 Mass. 687, 694-95 (1988), quoting W. Prosser & W. Keeton, Torts at 506 (5th ed. 1984).
Jackson’s alleged misconduct in this case consists of two acts. First, she accessed Biyant’s medical record when she allegedly had no legitimate reason to do so. Second, she allegedly disseminated Biyant’s confidential HIV diagnosis.
With respect to the first act, Jackson’s access to patient records was the kind of conduct she was employed to perform. Jackson testified that she saw Biyant’s HIV diagnosis when she reviewed BWH’s “emergency log” in connection with her job task to check the daily log to see how busy the hospital was going to be. Thus, if Jackson’s testimony is accepted by the juiy, Jackson’s alleged unauthorized access to Biyant’s record occurred within the authorized time and space limits of her employment and was motivated, at least in part, by a purpose to serve her employer. A disputed issue of fact concerning Jackson’s conduct, and the motivation therefore, is presented that could result in a finding that Jackson was acting within the scope of her employment when she accessed Biyant’s record. If a juiy were to find that *428 Jackson’s access to Bryant’s record was negligent (or otherwise wrongful), BWH could be vicariously liable. To the extent Bryant can prove any damages flowing from Jackson’s allegedly wrongful access, alone, Bryant could recover from BWH. Accordingly, summary judgment must be denied on this claim.
With respect to the alleged second act of Jackson— the dissemination—the summary judgment record provides no basis for common-law vicarious liability of BWH. The alleged dissemination was unrelated in time to Jackson’s access to Bryant’s record. More importantly, the summary judgment record demonstrates beyond dispute that the dissemination, if it occurred, was simply gossip between Jackson and Moore. The motivation of Jackson, in that instance, must be found to be entirely personal, in no way connected to BWH’s interests. As a result, Jackson’s alleged dissemination of Bryant’s HIV status was beyond the scope of her employment.
In sum, summary judgment for BWH must be denied with respect to Bryant’s claim that Jackson wrongfully accessed Bryant’s medical record. On the other hand, the common law principle of vicarious liability does not apply to Jackson’s alleged negligent dissemination conduct. Were it not for the statute described below, summary judgment would enter in favor of BWH with respect to the claim of wrongful dissemination of Bryant’s HIV diagnosis.
(b) G.L.c. Ill, §70F
General Laws c. Ill, §70F applies, specifically, to information concerning “HTLV-III antibody or antigen.” While the statute provides no definition of that term, case law makes it clear that the term includes human immunodeficiency virus (“HIV”). See Commonwealth v. Maxwell, 441 Mass. 773, 776, n.6 (2004). The Legislature created this special section of the law for HIV information that differs in some respects from the Patients’ Rights Act, G.L.c. Ill, §70E. Most importantly, §70F creates a private right of action under G.L.c. 93A for a violation of the statute.
The first paragraph of §70F provides that “No health care facility, as defined in section seventy E, and no physician or health care provider shall... (2) disclose the results of [a HIV] test to any person other than the subject thereof without first obtaining the subject’s written informed consent; or (3) identify the subject of such tests to any person without first obtaining the subject’s written informed consent.”[6] The definition of “facility” incorporated from §70E is expansive. It includes “any hospital” as well as other health care providers that may be public or private, including private, non-profit organizations. See Bello v. South Shore Hospital 384 Mass. 770, 772 and 780 (1981) (non-profit hospital is a “facility” under §70E). Thus, §70F applies to BWH.
The fourth paragraph of §70F states “(w]hoever violates the provisions of this section shall be deemed to have violated section two of chapter ninety-three A.” Thus, §70F creates a “per se” violation of §2 of c. 93A unlike the more general Patients’ Rights Act, G.L.c. Ill, §70E. Darviris v. Petros, 59 Mass.App.Ct. 323, 330 (2003). Section 2 of c. 93A is the operative prohibition of unfair methods of competition and unfair or deceptive acts or practices. Section 9 of c. 93A explicitly provides a private right of action for a violation of §2 for any person injured by the violation. Therefore, the fourth paragraph of §70F unquestionably gives a private right of action for damages to a patient against a “facility” like BWH for the disclosure of her HIV condition.
BWH argues against liability under §70F on the facts of the present case. It contends that it did not disclose Biyant’s HIV condition. If anyone did, it was Jackson and she was acting outside the scope of her employment. BWH’s argument raises whether §70F imposes a form of strict liability against a hospital for disclosure of HIV information regardless of whether the human being responsible for the corporation’s disclosure was acting outside or within the scope of her employment.
“(S]tatutory language is the principal source of insight into legislative purpose.” Local 589, Amalgamated Transit Union v. Massachusetts Bay Trans. Auth., 392 Mass. 407, 415 (1984) (quoting Bronstein v. Prudential Ins. Co., 390 Mass. 701, 704 (1984). The language of §70F is unequivocal with respect to the liability of a hospital for disclosure of a patient’s HIV test without written consent. There is no exception to liability of the hospital for an inadvertent, non-negligent or even good faith disclosure. There is no exception in the statute to liability of the hospital for a disclosure by a rogue employee acting outside the scope of her employment. BWH’s argument that it did not disclose Biyant’s HIV status misses the mark. Any disclosure made by a corporation, such as BWH, originates from an individual who is an employee. The statute makes the corporation liable for the disclosure without exception.
The legislative history of §70F emphasizes the breadth and scope of the statute. The legislative history was addressed by a single justice of the Supreme Judicial Court in Commonwealth v. Ortiz, 2001 WL 34129741 (Sosman, J.). The issue was whether a court could order a criminal defendant to reveal his HIV test so as to protect arresting officers who came into contact with the defendant’s blood. There, it was noted that while other statutes protecting the confidentiality of medical information have exceptions that allow disclosure under certain circumstances, §70F provides absolute confidentiality for HIV testing. “The absence of any such exceptions in §70F strongly suggests that the Legislature did not intend there to be any exceptions.” Id.
Given the language of the statute and the expressed public policy to provide absolute confidentiality to HIV tests, I find that BWH can be held strictly liable under *429 §70F if the jury determines that Jackson disclosed Biyant’s HIV status to Moore (or anyone else).[7]
CONCLUSION
For the reasons stated above, the motion for summary judgment of BWH is DENIED. The motion for summary judgment of Christine Collins is ALLOWED.

The evidence is unequivocal that Jackson had not previously been disciplined. Plaintiff points to testimony from Jackson to the effect that sometime prior to the Bryant incident she (Jackson) had received an inquiry from Human Resources as to whether Jackson had a “need to know” basis for accessing a patient’s records. Jackson responded that she did and never heard anything further.

defendants also assert that summary judgment should enter because Bryant’s claim is barred by the three-year statute of limitations for negligence claims. Suffice it to say that there are genuine issues of material fact as to when Bryant learned of the alleged dissemination of her confidential information. BWH’s Privacy Complaint Intake Form includes a reference to the dissemination taking place on June 9, 2007. This action was filed on June 7, 2010, within the applicable statute of limitations.

The evidence from Jackson’s deposition that she once received an inquiry from the human resources department about her access to a patient’s records fails to create any inference of negligence on the part of Collins and BWH. If anything, the evidence suggests that BWH personnel made appropriate inquiry when an issue arose and satisfied themselves that no privacy violation occurred.

Section 228 provides: “(1) Conduct of a servant is within the scope of employment if, but only if:
(a) it is of the kind he is employed to perform:
(b) it occurs substantially within the authorized time and space limits;
(c) it is actuated, at least in part, by a purpose to serve the master . . ."

In 2012, §70F was rewritten. The quote and discussion above concerns the 1986 version of the statute that was applicable at the time of the events here at issue. The 2012 version of the statute is not different, in substance, with respect to the issue in this case.

The United States Court of Appeals for the Second Circuit recently (March 25, 2013) certified a question to the highest court of the state of New York asking whether, under New York law, the common-law action for breach of fiduciary duty for unauthorized disclosure of medical information may run directly against a medical corporation even when the employee responsible for the disclosure is not a physician and acts outside the scope of her employment. Doe v. Guthrie Clinic, Ltd., 710 F.3d 492, 494 (2013). There, the New York statutes providing for confidentiality of medical information do not provide a private right of action like §70F. Section 70F arguably expresses an even stronger public policy for holding a medical corporation liable.